IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 3, 2018

## MALIK JONES-SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
Nos. 13-03489, 13-03490, 13-03491, 13-03492, 13-05896, 13-05897, & 14-01647
Lee V. Coffee, Judge**

_____

### No. W2017-01041-CCA-R3-PC
_____

The Petitioner, Malik Jones-Smith, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. Following our review, we affirm the judgment of the post-conviction court. However, we remand the case to the post-conviction court for entry of a corrected judgment form with respect to one of the Petitioner's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;
Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER., JJ., joined.

Ernest J. Beasley, Memphis, Tennessee, for the appellant, Malik Jones-Smith.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alanda Horne Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

The Petitioner was indicted for seven counts of aggravated robbery, two counts of attempted aggravated robbery, one count of especially aggravated kidnapping, one count of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony. On December 11, 2014, the Petitioner entered into a plea agreement

with the State. The Petitioner agreed to plead guilty to all of the charged offenses in exchange for the following sentencing recommendations from the State:

| Group | Indictment | Offense | Sentence |
|---|---|---|---|
| 1 | 13-03489 | Aggravated Robbery | 8 years |
| | | Aggravated Robbery | 8 years |
| | 13-03490 | Attempted Aggravated Robbery | 6 years |
| | | Attempted Aggravated Robbery | 6 years |
| | 13-03491 | Aggravated Robbery | 8 years |
| | 13-03492 | Aggravated Robbery | 8 years |
| 2 | 13-05896 | Especially Aggravated Kidnapping | 15 years |
| | | Aggravated Robbery | 12 years |
| | | Aggravated Burglary | 12 years |
| | 13-05897 | Aggravated Robbery | 12 years |
| | 14-01647 | Aggravated Robbery | 12 years |
| 3 | 13-05896 | Employment of a Firearm | 6 years |

The plea agreement further provided that the sentences in each of the groups above were to be served concurrently to each other but consecutively to the other groups, for a total effective sentence of twenty-nine years.

The offenses in Group 1 were committed between April 5 and April 7, 2013. The Petitioner was arrested and released on bail for those offenses. The Petitioner then committed the offenses in Groups 2 and 3 between June 11 and June 13, 2013. Therefore, the sentences for Groups 2 and 3 were statutorily required to be served consecutively to the sentences in Group 1. See Tenn. Code Ann. § 40-20-111(b). Similarly, the sentence for Group 3 was statutorily required to be served consecutively to the sentences for Group 2. See Tenn. Code Ann. § 39-17-1324(e)(1). According to the prosecutor at the guilty plea submission hearing, this sentencing arrangement was "the absolute bare minimum for . . . all these indictments."

The Petitioner was sixteen years old when he was arrested for the offenses listed above and seventeen years old at the time of the plea submission hearing. The Petitioner stated that it was his signature on the plea agreement forms and that his trial counsel had reviewed with him the plea agreement forms and the rights he would be waiving. The Petitioner further stated that he understood the plea agreement forms. The trial court then reviewed the various rights that the Petitioner was waiving by pleading guilty. The Petitioner stated that he understood his rights, that he had discussed the plea agreement with his attorneys and his family, and that it was his decision to plead guilty.

The trial court reviewed the charged offenses, the applicable range of punishments, and the plea agreement with the Petitioner. The Petitioner stated that he

understood all of this and had no questions about his plea agreement. The Petitioner further stated that he had no complaints about his trial counsel. The Petitioner admitted that his attorneys had reviewed with him the discovery materials provided by the State, that they had hired a private investigator, and that he had provided them with the names of possible witnesses. The trial court estimated that the Petitioner faced a maximum sentence of approximately 150 years if all of the indicted offenses had been brought to trial. The trial court concluded that the Petitioner had "freely and voluntarily" entered his guilty pleas and accepted the plea agreement.

The Petitioner filed a timely pro se petition for post-conviction relief. An attorney was appointed to represent the Petitioner in this matter and an amended petition was filed on December 8, 2015. As pertinent to our review, the petitions alleged that the Petitioner's guilty pleas were "invalid because [he] lacked a complete understanding of the charges due to his young age and questionable mental state during the guilty plea proceeding" and that his trial counsel had "not adequately prepared . . . [him] to plead guilty on these charges." The petitions also alleged that trial counsel had failed to properly investigate the charges against the Petitioner. On May 4, 2017, the post-conviction court held an evidentiary hearing on this matter.

The Petitioner testified that he felt confused at the guilty plea submission hearing and that "everything was basically being rushed." The Petitioner claimed that his trial attorneys did not explain the plea submission process to him. When asked why he did not say anything about being confused during the plea submission hearing, the Petitioner answered that he "was told to just go with the flow and get it over with." The Petitioner further claimed that "there was a whole lot of pressure" for him to plead guilty and that his trial attorneys had told him that twenty-nine years was "the best" that they could do. Despite this, the Petitioner also claimed that his attorneys had told him that he had a fifty-fifty chance of an acquittal at trial.

The Petitioner testified that he felt his trial attorneys did not "thoroughly investigate [his] case" or "follow up with anything." The Petitioner claimed that he had an alibi witness, Timothy Perkins, and that he told his trial attorneys about Mr. Perkins but that they never contacted to Mr. Perkins. When asked why Mr. Perkins was not at the evidentiary hearing, the Petitioner responded that Mr. Perkins "just won't show up" to court. The Petitioner also claimed that his trial attorneys did not look into his medical or mental health histories.

The Petitioner admitted that co-counsel had told him that he was "in the big league, facing real time." The Petitioner was aware that he faced a maximum possible sentence of 139 years if he went to trial and lost. The Petitioner further admitted that he thought pleading guilty was the right thing to do at the time of the plea submission hearing. However, the Petitioner testified that he wanted to withdraw his guilty pleas and

-3-

go to trial because "half of" the State's cases were "garbage" and that the evidence against him "was planted."

Co-counsel testified that he was initially retained to represent the Petitioner, but was then appointed when the Petitioner's cases became too "voluminous." Co-counsel recalled that lead counsel was also appointed due to the complex nature of the Petitioner's cases. According to co-counsel, he became less involved in the Petitioner's cases after lead counsel was appointed. However, co-counsel met with the Petitioner several times, represented the Petitioner at the preliminary hearing, reviewed the discovery materials with the Petitioner, and was present at the guilty plea submission hearing. Co-counsel testified that he took the Petitioner's age into account when discussing the cases with him.

Co-counsel testified that the State's initial offers "were sky-high," around sixty years. Co-counsel explained that he felt that all of the State's cases "were good, except one." Co-counsel recalled that most of the witnesses "immediately" identified the Petitioner as the perpetrator. Co-counsel testified that he advised the Petitioner to take the offer of twenty-nine years because the Petitioner was not going to get a better offer from the State.

Co-counsel believed that the Petitioner "knew what was going on" and that the Petitioner made the decision to accept the plea agreement. Co-counsel recalled that on the day of the plea submission hearing, the Petitioner said that he was accepting the plea agreement because he "did not want to risk it" and that he was "not going to play with these folks." Co-counsel further explained that the Petitioner was "very articulate and [was] more intelligent than the majority of people . . . [in] the [criminal justice] system." Co-counsel concluded that the Petitioner "knew full well" what he was doing when he accepted the plea agreement because they "had a very good discussion about what could potentially happen, what he was looking at, exposures, . . . [and] he had a very good understanding."

Lead counsel testified that he "beg[ged] and pleaded" to get the State to lower their offer to twenty-nine years. Lead counsel believed that the Petitioner understood what he was doing when he pled guilty. Lead counsel recalled that he had no problems communicating with the Petitioner and that he explained to the Petitioner the consequences of pleading guilty. Lead counsel testified that he went through the plea agreement form with the Petitioner and underlined each item as he explained it to the Petitioner. Lead counsel did not recall the private investigator's finding anything useful.

At the conclusion of the evidentiary hearing, the post-conviction court denied post-conviction relief. The post-conviction court concluded that the Petitioner had failed to establish his factual allegations by clear and convincing evidence. The post-conviction

court chose not to credit the Petitioner's testimony, finding it to be "dishonest" and "untruthful." The post-conviction court accredited the testimonies of lead and co-counsel. The post-conviction court concluded that lead and co-counsel had "properly investigated" the case and noted that the Petitioner failed to present any proof at the evidentiary hearing regarding his claims of an alibi or that he suffered from any mental disease or defect. The post-conviction court ultimately concluded that the Petitioner made an intelligent, knowing, and voluntary decision to accept the plea agreement. The post-conviction court subsequently entered a written order memorializing its decision.

## ANALYSIS

The Petitioner contends that his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of his trial counsel. The Petitioner argues that his trial attorneys "did not properly investigate the nature of the [] case against him, including looking into his medical records for a possible mental health defense." The Petitioner further argues that he "was confused about the nature of the [charges] against him" and would not have pled guilty "but for the actions of his attorneys." The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell

below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

With respect to the Petitioner's claim that trial counsel failed to "properly investigate the nature of the [] case against him," we note that there was no proof regarding either the Petitioner's alleged alibi or mental health defenses presented at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, "this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id. As such, the Petitioner has failed to prove these factual allegations by clear and convincing evidence.

Regarding the Petitioner's claim that he "was confused about the nature of the [charges] against him" and would not have pled guilty "but for the actions of his attorneys," we note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

-6-

<u>Alfonso C. Camacho v. State</u>, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

Here the post-conviction court chose to discredit the Petitioner's testimony at the evidentiary hearing, finding it to be "dishonest" and "untruthful." Rather, the post-conviction court accredited the testimonies of lead and co-counsel that the Petitioner understood what he was doing and made the decision to accept the plea agreement himself. The Petitioner faced a possible maximum sentence of 139 years, and his trial attorneys negotiated until the State agreed to "the absolute bare minimum" sentence of twenty-nine years. Furthermore, the Petitioner admitted that he thought pleading guilty was the right thing to do at the time of the plea submission hearing.

Additionally, the transcript of the guilty plea submission hearing belies the Petitioner's claims. The trial court reviewed the charged offenses, the applicable range of punishments, the rights the Petitioner would waive by pleading guilty, and the plea agreement with the Petitioner. The Petitioner stated that he understood all of this. The Petitioner also stated that lead counsel had reviewed the plea agreement with him, that he had discussed his decision with his trial attorneys and his family, and that it was his decision to accept the plea agreement. As such, the evidence supports the post-conviction court's conclusion that the Petitioner knowingly and voluntarily entered his guilty pleas. Accordingly, we conclude that the post-conviction court did not err in denying the petition.

However, we note that the judgment form for the Petitioner's conviction in indictment number 13-05897 incorrectly states that the sentence is to be served consecutively to the other sentences in Group 2 and 3 and concurrently to the sentences in Group 1. Therefore, we remand this case to the post-conviction court for entry of a corrected judgment form reflecting that the sentence for indictment number 13-05897 be served concurrently to the sentences in indictment number 14-01647 and Counts 1, 2, and 3 of indictment number 13-05896 but consecutively to the sentences in indictment numbers 13-03489, 13-03490, 13-03491, 13-03492, and Count 4 of indictment number 13-05896.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed. However, we remand the case to the post-conviction court for entry of a correct judgment form for indictment number 13-05897.

_____
D. KELLY THOMAS, JR., JUDGE